IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CIRO DARELLI,<br><br>    Plaintiff,<br><br>vs.<br><br>PARK CITY MUNICIPAL CORPORATION, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:06-CV-354 |

I.  INTRODUCTION

Plaintiff Ciro Darelli brings claims under Title VII and § 1981 and § 1983 arising from his employment termination when he was a reserve officer trainee (trainee) with the Park City Police Department. He alleges that Defendants discriminated against him based upon his race and national origin (Uruguay) in violation of Title VII. He also alleges violations of 42 U.S.C. §§ 1981 and 1983 (Equal Protection). Defendants are Park City Municipal Corporation (Park City), Lloyd Evans, its Chief of Police, Phil Kirk, a Park City Police Lieutenant, Bill Morris, a Park City Police Sergeant and the Reserve Coordinator, and Thomas Bakaly, the City's Manager.

1

Defendants move for summary judgment on all claims. Plaintiff opposes summary judgment only on the Title VII claim of discrimination based on national origin. Thus, Plaintiff has tacitly conceded all claims except the Title VII claim. The Court finds that Plaintiff fails to show that Defendants' proffered legitimate nondiscriminatory reason for termination was pretext. Accordingly, the Court grants Defendants' Motion for Summary Judgment on all claims.

## II.  STANDARD AND CONCEDED CLAIMS

> Summary judgment is proper only if there is no genuine issue of material fact for determination, and the moving party is entitled to judgment as a matter of law. . . We review the entire record on summary judgment . . . in the light most favorable to the party opposing summary judgment.[1]

> If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law. If it has not, summary judgment is not appropriate, for "[n]o defense to an insufficient showing is required."[2]

Examining first the claims that Plaintiff concedes by failing to respond, the Court finds that Defendants have shown that there are no material issue of fact on these claims and that Defendants are entitled to judgment as a matter of law on the claims as follows: Summary judgment will be granted on Plaintiff's § 1983 claim for deprivation of property because Defendants have shown facts establishing Plaintiff, as a probationary employee,

---

[1] *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1250, (10th Cir. 2005) (quoting *Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476 (10th Cir. 1990)).

[2] *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160-61 (1970)).

had no property interest in continued employment with Park City. Summary judgment will be granted on the claim against Defendants in their individual capacities because individual Defendants have shown that they are entitled to qualified immunity and because "Title VII precludes individual supervisor liability."[3] Summary judgment will be granted on Plaintiff's claim against Park City under § 1981 and § 1983 because the City has shown that Plaintiff has not established a municipal custom or policy of discrimination or failing to investigate and remedy discrimination and Plaintiff has not shown any issue of fact on intentional discrimination by the City Manager. Summary judgment will be granted on the claims against Defendant's individually because Plaintiff has not shown facts supporting intentional discrimination by the individual defendants. Summary judgment will be granted on the breach of contract claim because Defendants have shown that it is preempted by the Utah Antidiscrimination Act. Plaintiffs claim for punitive damages against Park City is dismissed because municipalities are immune from punitive damages under § 1983. The claim for punitive damages against defendants in their individual capacities is dismissed because Plaintiff has not shown any facts to support such damages.

### III.   TITLE VII CLAIM

A. Facts Deemed Admitted

Turning to the remaining claim, that of discrimination under Title VII based upon national origin, the Court notes that Plaintiff failed to comply with DUCivR 56-1 which requires that the party opposing summary judgment file a memorandum in opposition that

---

[3] *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999).

"contains a concise statement of material facts as to which the party contends a genuine issue exists."[4] In particular, the party opposing must:

> number the facts in dispute and must refer with particularity to those portions of the record on which the opposing party relies and, if applicable, must state the number of the movant's fact that is disputed. All material facts of record meeting the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment *unless* specifically controverted by the statement of the opposing party identifying material facts of record meeting the requirement of Fed. R. Civ. P. 56.[5]

Defendants submitted 230 detailed statements of fact, each includes a specific cite to supporting evidence such as affidavits, deposition testimony, or exhibits. Thus, Defendants' Motion complies with Fed. R. Civ. P. 56 and DUCIVR 56-1(b). In response, Plaintiff does not specifically dispute any of Defendants' statements of fact, but does attempt to portray several as contradictory by alleging a few further facts. Plaintiff does not state the number of any of the movant's facts that he disputes. Accordingly, all of those facts set forth by Defendants are deemed admitted for the purposes of summary judgment.[6] The Court incorporates those facts by reference. Only the following short summary of those facts is necessary for context for the present ruling.

---

[4] DUCivR 56-1.

[5] *Id*. (emphasis added).

[6] *Gross v. Burggraf Const.* Co. 53 F.3d 1531, 1546 (10th Cir. 1995) (holding that "absent a specific reference to an affidavit, a deposition transcript, or a specific exhibit" in a summary judgment motion, the court will not "search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury").

4

B.  Factual Background

Plaintiff (Darelli) was born in Uruguay, is a native speaker of Spanish, and speaks heavily accented English.  In 2003, the Park City Police Department (Police Department) determined that it needed additional Spanish-speaking officers due to the growth of Park City's Latino population.  The Police Department also determined to create its own reserve officer training program.  It hired Defendant Morris as a part-time sergeant to develop and supervise its reserve officer training program.  The training program was to consist of a several week-long classroom training course followed by on-the-job training called field officer training.  During the field officer training period the trainees were to work under the supervision of experienced officers (field training officers or FTOs) to complete a check-off list of various law enforcement tasks, and demonstrate their ability to meet certain standards.  The standards included, among other things, demonstrating the ability to follow Department procedures, interact well with others, communicate well verbally and in writing, and to accept direction, constructive criticism, and be self initiated.[7]

During their field training period, the trainees could also work general duties for the Department.  These were duties requiring a police presence such as assisting with crowd control.  During these general duties the trainees were not accompanied by an FTO and accordingly, were not to take police action, but instead to call for assistance.

---

[7]Def.s' Facts ¶ 28 (quoting Reserve Officer Training Manual).

Morris reported to Defendant Kirk, a Lieutenant. Kirk is a Latino and a member of a professional association of Latino law enforcement officers. Kirk reports to Defendant Evans (the Chief), the Chief of the Police Department.

In the Fall of 2003, the Chief met Darelli at a meeting where the Chief spoke regarding Park City's recruitment of Latino officers. The Chief invited Darelli to submit a resume. Darelli attended and completed the classroom portion of the Department's reserve officer training program. On December 6, 2003, Morris recommended hiring Darelli for the field training program. In his written recommendation, Morris noted Darelli "does have some difficulty speaking English distinctly."[8] Upon Morris' recommendation Darelli was hired as one of the Department's class of 12 trainees. Three of the trainees were Latino. One other trainee, a Caucasian, was eventually terminated.

Darelli began work in general assignments on December 19, 2003. He did not begin his field training hours until January 14, 2004, a typical pattern for the 12-member class of trainees.

Kirk began to hear complaints about Darelli almost immediately upon Darelli's beginning work on general assignments in December 2003. Kirk heard complaints about Darelli at the regular Sergeants Meetings, which Morris, as a part-time sergeant, did not attend. In short order, there was a series of problems with Darelli. They included how Darelli responded to a direction from a supervisor about where not to park; with how he responded to criticism about his attempt to give unsupervised traffic citations when trainees

---

[8] *Id.* at ¶ 26.

were only authorized to give parking tickets when supervised by an FTO; with his handling of a situation involving a fellow officer where he had been asked to translate; and with his handling of a citizen complaint about individuals playing loud music (the last incident).

In each of these incidents, his supervisors were concerned with his judgment, with his not following directions, and with the manner in which he responded to their direction or criticism. The ticketing incident involved Kirk's own directions to Darelli and consequently, Kirk's own personal observation of how Darelli refused to accept feedback. In addition, Kirk began to hear reports of problems with Darelli not following the chain of command and his poor report writing. Darelli received verbal counseling in connection with several of these incidents. Written reports of the verbal counseling were prepared. Kirk spoke with Darelli on several occasions about the problems, each time becoming more convinced that Darelli would not accept feedback, respect the chain of command, or acknowledge that others were having problems with his performance.

In January 2004, the Police Department learned that during his academy training, Darelli's evaluations by his peers were overwhelmingly negative.

Darelli's evaluations from his FTOs ranked him as marginal or acceptable. He did not receive any ranks in the category "exceeds standards."

Eventually, Morris recommended to Kirk that Darelli be terminated in connection with the last incident. Morris also recommended that a Caucasian trainee be fired. Kirk, based upon his own observation of Darelli as well as the problems reported to him by various sergeants, determined that if he did not receive a reasonable explanation from Darelli about the latest incident, he would terminate his employment.

Before meeting with Darelli, Kirk met with the Caucasian trainee in the same class and terminated him from the program by giving him the alternative of submitting a resignation or being fired.

Kirk met with Darelli regarding the last incident. Darelli's response to the latest problem—defensive and argumentative— convinced Kirk that Darelli should be terminated from the program. He terminated Darelli following the same procedure that he had earlier followed with the Caucasian trainee.

The Chief subsequently informed Darelli and Kirk that Darelli was not terminated because only Defendant Bakaly (the City Manager), had authority to terminate City employees. Darelli asked for and received a meeting with the Chief. The Chief subsequently met with Kirk, and then Darelli again. In the Chief's second meeting with Darelli, the Chief told him that he found no basis to believe that Morris discriminated against him, that Darelli was not meeting the Department's expectations, and he was not fitting into the Department. The Chief determined that Morris' concerns regarding Darelli's performance were well-founded. The Chief offered Darelli an opportunity to resign. When he did not hear back from Darelli, the Chief conveyed his concerns about Darelli's job performance to the City Manager, together with a recommendation that he be terminated. The City Manager agreed, and Darelli was terminated.

C.  Pretext

To prevail on a claim alleging termination on the basis of race, [the plaintiff] must first establish a prima facie case, demonstrating that: (1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination. If [the plaintiff] meets his burden of

establishing a prima facie case, the burden shifts to the City to articulate a legitimate, nondiscriminatory reason for the termination that is "not facially prohibited by Title VII." If the City satisfies this standard, the burden shifts back to [the plaintiff] to provide evidence showing that the City's proffered reasons are a pretext for racial discrimination.[9]

For purposes of their Motion only, Defendants accept that Plaintiff has established a prima facie case. Defendants proffer the follow as their legitimate, nondiscriminatory reason for terminating Plaintiff's employment: he "lacked judgment and common sense in dealing with fellow officers and the public, that he became defensive and argumentative in the face of constructive criticism and direction, that he overstepped the bounds of his authority, and that he otherwise lacked necessary police skills and knowledge."[10] Plaintiff concedes that Defendants have met their burden of showing a nondiscriminatory reason for termination and that the burden shifts to him to show Park City's stated reason for termination is a pretext.[11]

The Court notes that Plaintiff followed the unusual procedure of signing his attorney's Memorandum of law under oath.[12] Darelli's signature is notarized and he states he has personal knowledge of the facts therein. It appears that by this procedure, Darelli attempts to have the Memorandum qualify as an affidavit in opposition to summary

---

[9] *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004) (quoting *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1317, 1319 (10th Cir. 1992) (additional citation omitted)).

[10] Def.s' Mot. at 2.

[11] Pl.'s Response, at 2-3.

[12] Docket No. 39, at 1 and 11.

judgment.[13]  However, the Memorandum also contains legal argument and it is not possible to clearly distinguish between when it is analyzing or arguing regarding Defendants' statement of facts and when it is attempting to aver facts.  It is especially difficult because it contains very few citations to any facts.

> A plaintiff may show that the employer's proffered reason for terminating him is pretextual by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence" and therefore infer that the employer's actions were not for the reasons given.  Typically, a plaintiff shows pretext by direct "evidence that the [employer's] stated reason for the adverse employment action was false," or by demonstrating that the employer "treated [him] differently from other similarly-situated employees who violated work rules of comparable seriousness."  "Even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment. Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment."[14]

A plaintiff may also show pretext "with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances."[15]

However, in examining the employer's proffered reason for its employment action:

> We do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and

---

[13] *Compare* 28 U.S.C. § 1746 (listing requirements for *unsworn* statement to qualify as declaration).

[14] *Sulich v. Sysco Intermountain Food Services, Inc.*,  242 Fed.Appx. 532, 535, (10th Cir. 2007) (quoting *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); and *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007)).

[15] *Salguero,* 366 F.3d at 1176.

10

acted in good faith upon them. "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." Thus, we consider the facts as they appeared to the person making the decision, and we do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment. "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."[16]

Darelli contends that inconsistencies in the City's claimed legitimate nondiscriminatory reasons show pretext. Darelli contends that there is an inconsistency between the fact that Kirk alleges Darelli first complained that Morris was discriminating against him on March 15, 2004, when Darelli argues he told Kirk about it on January 23, 2004. This is not an inconsistency in the City's stated reasons for the termination, it is an issue of non-material fact for two reasons. First, the timing of any complaints by Darelli complaints against Morris is non-material because this is not a retaliation case. Second, it does nothing to challenge the facts that Kirk received many complaints about Darelli's performance and judgment from other Sergeants and also formed his own opinion on these issues from his own experience with Darelli.

Darelli contends that there is an inconsistency between the fact that there are no minutes of the Sergeants meetings airing concerns about Darelli's performance. This is not an inconsistency in the City's stated reason for his termination. There is nothing in the record to contradict Defendants' fact that there were no minutes of any of the Sergeants

---

[16] *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 -1119 (10th Cir. 2007) (quoting *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) and *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

11

meetings during this time period. There is simply no evidence that the complaints were not made during the meetings as set forth in Defendants' facts.

Darellli contends that there is an inconsistency in the fact he is alleged to have a fixation about writing tickets when he only wrote two such tickets or when he was told to write such tickets. However, Darelli produces nothing to challenge Defendants' facts regarding the difference between the kinds of tickets that trainees were authorized to write without a FTO and the kind involved in his reprimand.

Darelli contends that there is an inconsistency in Defendants' position that it is not credible that Morris would recommend he be hired for a position *because* he was a Spanish speaking Latino, knowing his English was poor, and then immediately discriminate against him for those same reasons. Darelli contends that the inconsistency of Morris' actions is shown because Morris gave a negative review about his job performance to another potential employer before Darelli had begun his FTO training. However, this argument is directly contradicted by Darelli's own very specific deposition testimony that he doesn't know who gave this early negative review.[17]

Darelli contends there is an inconsistency between the fact of the "reprimand letters" and the fact that he was not given copies until after he filed his charge of discrimination. However, Darelli submits nothing to dispute Defendants' evidence that the documents were memorializations of Defendants' position in the verbal counseling that he received in connection with each incident.

---

[17]Def.s' Reply, Ex. A, Darelli Depo. at 497-500.

Darelli contends that there is an inconsistency between his marks on his FTO evaluations and his termination.  Specifically he contends that an FTO evaluation by one FTO contained passing grades but then the same FTO wrote a memo critical of Darelli's performance during the same time period.  But Darelli produces nothing to dispute the evidence that Kirk did not receive the second version by the FTO until after Kirk had told Darelli he was terminated.  Further, Darelli's rather lackluster FTO reviews are not inconsistent with his termination because the termination was based largely on incidents in which he worked without an FTO.[18]

Darelli contends that the City's position that he had difficulty with the chain of command is inconsistent with the fact that he only went outside the chain of command to complain about Morris.  To the contrary, Defendants have produced evidence of his superior's concerns with Darelli's lack of respect for the chain of command, including the incident where he was translating and issues with shift scheduling.

Darelli also argues that the last incident shows inconsistencies because he did not act wrongly.  However, pretext requires us to look at the facts as they appear[ed] to the person making the decision to terminate [the] plaintiff."[19]  "It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance."[20]  Thus, in evaluating the employer's proffered reasons for termination, the Court views the actions from the persons making the employment

---

[18]*E.g.*, the parking incident, the ticketing incident, and the last incident.

[19]*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000).

[20]*Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).

decisions—in this case Kirk, who made the recommendation to terminate Darelli; the Chief who reviewed the matters, interviewed Darelli and made the same recommendation; and the City Manager who followed the recommendation.

The issue on pretext is not whether the decision was "wise, fair or correct, but whether [the employer] reasonably believed at the time of the termination"[21] that Darelli did not meet the standards for the trainees. "Title VII . . . [does not] prohibit an employer from making hasty decisions that appear harsh; what [it] forbid[s] are decisions made with discriminatory animus."[22] Darelli presents nothing to dispute Defendants' facts showing that although he was presented with Darelli's side of the last incident, Kirk reasonably believed the explanation was not adequate because it showed Darelli's problems with such things as not accepting feedback—the legitimate non-discriminatory reasons the City proffers. Nor does Darelli produce anything to show that from the point of view of the Chief and the City Manager, they did not reasonably believe the nondsicriminatory reasons for his termination.

Darelli next contends that Kirk's failure to follow City policy regarding termination shows pretext. However, there is no dispute on Defendants' facts that Kirk, relatively new to the City, was not told by the Chief that only the City Manager had authority to terminate City employees until after Kirk attempted to terminate Darelli. It also undisputed that Kirk acted similarly with regarding to terminating a Caucasian trainee immediately before

---

[21] *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007).

[22] *Id.*

attempting to do so with Darelli.  Under these facts, Kirk's attempt to terminate Darelli does not raise an inference that the failure to follow the procedure was a pretext for discrimination against Darelli.  Further, once the mistake was pointed out to both Kirk and Darelli, it is undisputed the correct procedure was followed.

Lastly, Darelli contends that he shows pretext by showing that he was treated differently than other similarly situated employees.

> "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."  Also, a difference in treatment between two employees by the same supervisor does not automatically give rise to a Title VII or ADEA claim . . .
>
> * * *
>
> "[I]t is up to the plaintiff to establish not only that differential treatment occurred, but also to rule out nondiscriminatory explanations for the differential treatment."[23]

Darelli contends that other trainees wrote more tickets than he did but did not receive verbal counseling.  However, he submits nothing regarding the type of tickets at issue for the other trainees, or whether they were with FTOs when the tickets were written.  Therefore, he does not establish that any other officer was treated differently.

Darelli contends that he was treated differently than other officers because Morris demanded his response to the last incident four days before it was due.  However, Darelli does not contest the fact that he admits that it was he who volunteered to Morris that the

---

[23] *Timmerman*, 483 F.3d at 1120-21 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997))(internal quotation and footnote omitted).

15

response would be on his desk the next morning and then failed to follow through on the commitment. Darelli does not show that another trainee or officer was similarly situated.

Darelli also contends that the other trainee who was terminated was accused of very different conduct. This allegation does not show how differential treatment occurred or rule out nondiscriminatory reasons for any differential treatment.

Finally Darelli makes the conclusory allegation or argument that he was singled out and treated differently by being "criticized and eventually terminated for actions that many, if not all, of the other reserve officers were performing as regularly, if not more frequently."[24] To the extent that this is argument, it is unsupported by record citation. To the extent that it is an attempt to show an issue of fact, it is conclusory. "Conclusory statements are insufficient to overcome defendants' motion for summary judgment."[25]

### IV. CONCLUSION AND ORDER

Defendants have shown that there are no material issues of fact and that they are entitled to judgment as a matter of law, it is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 26) is GRANTED. It is further

---

[24] Pl.s' Mem. at 11.

[25] *Parker v. Town of Chelsea*, 2008 WL 313680, *4 (10th Cir. 2008); *Mallard v. Tomlinson*, 206 Fed. Appx. 732, 737 (10th Cir. 2006) (noting that the Supreme Court has held "the purpose of Rule 56(e) is to require plaintiff to 'set forth specific facts showing that there is a genuine issue for trial' not to simply 'replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit'") (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

ORDERED that Defendants' Motion to Exclude (Docket No. 33) is MOOT. It is further

ORDERED that the clerk of court shall enter judgment in favor of Defendants and against Plaintiff on all claims.

DATED   March 17, 2008.

                        BY THE COURT:

                        _____
                        TED STEWART
                        United States District Judge